■ OSQUGAMA F. SWEZEY et al., Respondents, v MERRILL LYNCH, PIERCE, FENNER & SMITH INC., Respondent, NEW YORK CITY DEPARTMENT OF FINANCE, Respondent, and PHILIPPINE NATIONAL BANK et al., Intervenors-Appellants. [997 NYS2d 45]—

Order, Supreme Court, New York County (Charles E. Ramos, J.), entered June 13, 2014, which granted petitioners' motion to reargue to the extent of lifting a previously imposed stay, order-

ing petitioners' counsel to serve the instant turnover petition on the Embassy of the Republic of the Philippines (the Republic) in Washington, D.C. and on the Philippine Consulate in New York, and giving the Republic 60 days from filing of proof of service to intervene and respond to the petition, unanimously reversed, on the law and the facts, without costs, the motion denied, the stay re-imposed, and the provisions of the order dealing with service and the Republic vacated.

When the motion court imposed a stay in this matter in February 2014, it noted, "[T]his petition cannot proceed to a final conclusion in the present landscape. . . . [B]ut for the passage of time, the issues remain unaltered since the Court of Appeals' dismissal of" Swezey's prior turnover petition (*see Swezey v Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 19 NY3d 543 [2012]). Only a few months later, the court lifted the stay, apparently because it felt that the Republic was "dragging their feet." This was error. In *Swezey,* the Court of Appeals said, *"[I]f the Republic fails to seek enforcement of its* [Philippine] *judgment . . . ,* the time may come when the . . . class [whom petitioners represent] could again ask a New York court to reconsider the enforcement of its [U.S. federal] judgment" against the estate of nonparty Ferdinand E. Marcos (19 NY3d at 555 [emphasis added]). The Republic did not fail to seek enforcement of its judgment; on the contrary, it moved in the Philippine Supreme Court for immediate issuance of entry of judgment.

We note that, since the order appealed from, the Sandiganbayan (Philippine anti-corruption court) has issued a writ of execution. If the Republic fails to seek enforcement of this judgment within a reasonable time, petitioners may move to lift the stay that we are re-imposing.

Regardless of whether the service ordered by the court violated 28 USC § 1608 (a), it violated the Vienna Convention on Diplomatic Relations and the Vienna Convention on Consular Relations (*see Autotech Tech. LP v Integral Research & Dev. Corp.,* 499 F3d 737, 748 [7th Cir 2007] ["service through an embassy is expressly banned both by an international treaty to which the United States is a party (viz., the Vienna Convention on Diplomatic Relations) and by U.S. statutory law"], *cert denied* 552 US 1231 [2008]; *Sikhs for Justice v Nath,* 850 F Supp 2d 435, 441 [SD NY 2012] ["Under the Vienna (C)onvention (on Consular Relations), service of process at consular premises is prohibited" (internal quotation marks, brackets, and ellipses omitted)]).

Even if, arguendo, service was proper (*see Federal Motorship*

*Corp. v Johnson & Higgins,* 192 Misc 401, 403, 406-408 [Sup Ct, NY County 1948], *affd* 275 App Div 660 [1st Dept 1949], *lv dismissed* 299 NY 673 [1949], *appeal dismissed* 299 NY 793 [1949]), the motion court should not have tried to coerce the Republic—a sovereign state—to appear (*see Swezey v Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 87 AD3d 119, 130-131 [1st Dept 2011] ["We think it inappropriate for the courts of New York to put the Republic to a Hobson's choice between, on the one hand, its right not to litigate in this state and, on the other hand, protecting its interest in property that (through no fault of the Republic . . . ) happens to be located here"], *affd* 19 NY3d 543 [2012]; *see also Swezey,* 19 NY3d at 553 ["Since only the Republic can decide whether it should submit to New York's jurisdiction, it would be inappropriate to force the Republic to litigate in our state court system contrary to an otherwise valid invocation of the sovereign prerogative"]).

As in the prior turnover proceeding, we sympathize with petitioners. They or their decedents were the victims of human rights abuses during the Marcos regime, and they have a valid U.S. federal judgment against Marcos' estate. However, as the Court of Appeals noted, "[T]he judgment that [petitioners] secured is against the estate of Ferdinand Marcos and it can be lawfully executed only against property that the estate legally owns. If the Arelma assets [i.e., the assets that petitioners are seeking in this turnover proceeding] belong to the people of the Philippines—as that country's highest court has declared—the class [i.e., petitioners] has no claim to that property" (*Swezey,* 19 NY3d at 555; *see also Swezey,* 87 AD3d at 132 ["however morally compelling the claim underlying a judgment may be, the judgment creditor is entitled to execute only against property that actually belongs to the judgment debtor"]). Concur—Friedman, J.P., Acosta, Saxe, Manzanet-Daniels and Gische, JJ.